Good morning, your honors. If it pleases the court, my name is Chris Aravia. I represent Dominque Wells. And as a preliminary matter, I would just like to say that I think at a minimum that this should be at least a limited remand under D.N.V. U.S. 137, Supreme Court 1170, just for a possible remand on the non-mandatory part of the sentencing. However, I want to move into what I think is the more important issue for Mr. Wells, which is generally the entire crime and violence question, certainly an area that's been evolving even since the briefs were submitted. I want to focus on the elements clause and some of the related issues because I think the government has conceded that the residual clause is not appropriate here. I'd like to first make a couple of preliminary remarks regarding the Hobbs Act. There is an unpublished decision, Abdul Howard v. United States, from the Ninth Circuit from 2016 that holds that the Hobbs Act robbery is a crime of violence. And I want to delve into that because I think there are a couple of issues there, one of which is that in that decision, it seems to be based on CELFA, which is from 1990, also Ninth Circuit, 918 F. Second 749. And in that case, they take the word intimidation from the 18 U.S.C. 2113 robbery statute, which seems to me to actually replace threaten, the threatening language in Hobbs or the attempt to threaten. And in Howard, what they do is take intimidation and turn that into the equivalent of the fear of injury, and that seems to be the basis for holding it to be a crime of violence. And I would submit two things, one of which is that CELFA, by its own terms, did not attempt to set out a per se rule, and it seems that there are three distinct terms, threaten, intimidation, and fear of injury. They're all kind of being conflated and used to ‑‑ Let me ask you a question about that. Am I right in thinking we don't have a precedential decision on this point? Yes, that's correct. You're talking about amend this? I believe that's correct, sir. I can tell you the issue is pending in several other cases. Yes. I'm not urging that you don't argue it, but we're going to ‑‑ we're the fourth or fifth panel in line on this issue, so it may be decided in a precedential case in the meantime by which we will be bound. Right. I don't ‑‑ if that happens, of course, we'll give you a ‑‑ we'll probably give you a chance to brief it, I suppose, but I guess the question is, knowing that our hands are going to be tied in this matter, or likely tied, do you want to direct time towards other issues? And I'm hoping that your hands won't be tied and that you'll see it. Well, you're hoping we're first in line. Yeah, exactly. We're not. Let me assure you we're not. We're not. We're like fifth or sixth in line on this issue. It's very good. No, I certainly understand that. And just to finish, I just think that the use of different terms, they must have different meanings and different significance. And I want to briefly say something about the elements clause as it pertains to this case, which is just that it seems in the statute, with Hobbs Act, you're talking violence or threat or fear. The jury instructions also use that construction with or. The indictment has them all linked with and. But I think the significance there is just that the fear of injury, I think, should be considered distinct from the other elements that would fit it into 924 C. I want to get to another aspect of this. And in the case of Mr. Wells, this is the most troubling. It's troubling for two reasons. One, because it obviously created a horrific result for Mr. Wells. And two, because under the deal versus U.S., which is 508 U.S. 129 from 1993. It seems that the Supreme Court, it doesn't seem the Supreme Court said that the kind of stacking that has happened in Mr. Wells's case is permissible. And I do have an issue with that, which I'll get to in a moment. But I think it's important to and I realize you're bound by it, but I think it's important to keep in mind that the dissent in that case made an interesting point, which is that from the time that the 924 was passed, which I believe was 1968 until about the late 80s, there hadn't really been a situation where someone tried to interpret second or subsequent conviction as being convictions that are all in a group. And there's two ways of looking at that. One is sequential prosecutions. But one of the things that was pointed out, I think, in a deal would be the situation where rather than have one prosecution for five robberies, there would be five separate prosecutions, which I don't think is practical. But also, I don't think that's how people in a common-sense context would interpret second or subsequent. I think it means that after you've been prosecuted the first time and given the enhancement, you would then have to go out and do another robbery. And I guess — If we give a limited remand for re-sentencing, wouldn't that be part of your argument, re-sentencing? Well, I would certainly hope so. Perhaps you should go to other elements of this case. Sorry? Perhaps you should go to other elements of this case. I don't understand. Other elements of this case that you're going to argue, rather than re-sentencing over the — I take it the government doesn't oppose a limited remand for re-sentencing. Right. But I think they would oppose on — I hear your point on deal, but — Yeah. Now, we're super-stuck by Supreme Court precedent, not just by our own. And I guess the only thing I would say there is I think there might be daylight to make a distinction based on the idea that while stacking them the way it was done in deal is permissible, it doesn't necessarily have to be mandatory, because — Did you argue that below? I'm sorry? Was that argued below? No. I don't believe so. Maybe you could argue it below on remand, but otherwise, it seems to me we can't take it up in the first instance. Okay. I understand. I just did think it was important to discuss the stacking issue, so — And then I wanted to — sticking with the issues pertaining to the sentence, and this was something that certainly came up at the sentencing and in the brief, I do think there's an Eighth Amendment cruel and unusual punishment issue here, and I realize that there's a case from 1998, which is Harris, it's 154 F. 3rd, 108.2. And in that case, in some ways it was similar to this one, but there was an 1,141-month sentence issued. The Ninth Circuit in that case urged Congress specifically to look at this, because that was a case where perhaps even more than in Wells' case, there were sympathetic defendants, not sympathetic because of what they did, but sympathetic just in the sense that they were college students who obviously ran off the rails. The point there is that the Ninth Circuit, to its credit, urged that Congress perhaps take some kind of action. The only thing that's happened since then is that the penalties have actually been increased, so nothing happened. I think at some point there has to be a line drawn. In that case, 1,141 months was not considered cruel and unusual. In this case, we had 1,354. There's got to be a number somewhere. I think there's enough daylight between those two that, you know, perhaps this is the case. But it would be nice just to reconcile the kind of the inherent conflict between the sentences that are being handed out in a case like Wells' and 3553A. And that leads me to another interesting issue, which is just that there was a case decided three days ago, Hernandez. I think I made reference to it in my supplement. And it's sort of analogous at best, but I think it's worth mentioning that in that case, a trial tax imposed by the same judge as this case, Wells, the same judge below, when it was done by his own volition, has been invalidated. I think in some ways, a case like this, where you have co-defendants who admittedly were only involved in one or two of the five robberies, but still got 48-month sentences, and Mr. Wells got 1,354, I think you could argue that that operates as an implicit tax. The only difference is, same judge, but he was not acting of his own volition. And I find that to be problematic. In addition to that, just going back to the sentencing hearing, there are some issues that I guess were problematic in the sense of, as the judge stated, the separation of powers issue, his sentencing authority being usurped. He was very express in that. It sounds like the district judge was and is not unsympathetic to the arguments you're making here. Yes, that's correct. And the government has said it has no objection to a limited remand for resentencing, correct? Yes. Does this fall in the category of quitting while you're ahead? The remand doesn't really help your client, because he'll be in jail for the rest of his life. Yes. And that's one of the reasons I didn't really even go into that to any extent in the opening brief, just because it's not even a periodic victory. It's less than that. But what I'm interested in is where do you think we have any authority to deal with this? I mean, I take it what you're saying is maybe we should say this is cool and unusual, even though in Harris we said 1,141 months wasn't. We should write another letter to Congress, which they might ignore. So I'm trying to figure out where it is. I'm sympathetic to the argument you make, and I think this court was sympathetic to it in Harris. But where do we have the ability to help you out? Well, I think that there's two potential areas, one of which has to do with the Eighth Amendment. As I said, I think at some point there's a number. A million months would obviously, I think, qualify. 1,141 didn't. Does 1,354? I don't know. I think 1,200. But I guess it's the same, still in the area of periodic victories. So if your client's sentence were reduced to 1,141 months. Fair enough. That's a good point. I didn't think of that. I guess that would be, yeah, I understand your point. As far as, I think, with deal and stacking, I do think that it could be a situation where not making that kind of stacking mandatory could be an issue. And I think that... You're not going to discuss anything regarding guilt? I was going to get to those briefly, but I felt that this was the most important one. So the other issues... I think that in the case of the argument that I made with Ferretta and also with Interstate Commerce, all I was really doing was just expressing that we believe that there could be a modification to be made. But that's sort of outside of your purview, but I still felt that those issues were worth raising. The issue that I had with the authentication of the video, some people might say, well, why does that matter? There were five robberies. But that was the first one. And I think that starts the ball rolling and it seemed improper to allow someone who wasn't even around at the time of the robbery to be the one authenticating and making statements about things that he really didn't have any basis. Well, didn't he only say this is an accurate depiction of the store as it existed at the time? If I were there the day before, for example, and we had a video with the courtroom, couldn't I authenticate that this is an accurate depiction of the courtroom? I would think the day before, yes. But I think we were talking about 18 months, so it was a longer period of time. Any evidence that the physical layout of the store changed during that time period? No. So your argument is that the video should have been excluded for absence of foundation? Yes. And, Your Honors, if I could, I'd like to reserve the balance for rebuttal. Good morning. May it please the Court. Adam Flake for the United States. I did want to be clear to the Court that the government does not oppose a limited remand. I kind of hedged about it in my brief, but in preparing for argument, I'm remiss that I did that. And I think that this case does squarely come within Dean, or at least the district court should be given the opportunity to decide whether or not to reduce it. So the Court should know that because there were mandatory sentences in this case, those should be considered in the length of the non-mandatory sentence? Yes, Your Honor. We don't have any objection to a remand on that basis. And I'm happy to address any questions that they may have. Well, I guess the question I have is one that maybe you can't help us with, and maybe we can't help defense counsel with, but you have three. How many people involved in these robberies? Mr. Wells was involved in all of them, and he had accomplices in some of them. And they get four-year sentences, and he gets life. I understand they cooperated in other things like that, but isn't that sort of, if you look at the case from 30,000 feet, that's what's sort of troublesome about it. What's the government's response to that? The government's response is that the mandatory portion of the sentence is, it operates, it results as the operation of the statute. And this Court has been very clear that it doesn't have the ability to disregard the language that Congress put in requiring the mandatory minimum sentence. But at some point, doesn't that mean, as the Court addressed in Hernandez, that the defendant is being punished for going to trial? Well, I mean, I don't know where the dividing line is on this, but sort of, if you think about this as an administration of justice issue, and we may be unable to deal with it, it's troublesome when you have people with somewhat similar culpability that get such disparate sentences, and the reason is that one decided to try the case, and the other two did not. Your Honor, I think that there's two differences between this case and Hernandez. First of all, Hernandez did not invent that 24-7. No, I don't think Hernandez, I don't even think your colleague says Hernandez decides this case. I'm just using it as a discussion point. But I think that there's a distinction between punishing somebody for pleading guilty or, excuse me, for exercising his right to go into trial and the government offering to dismiss charges in exchange for a guilty plea. The first is forbidden, and the second is our stock in trade. That's what we do. No, I understand. But at the end of the day, they come to the same result, do they not? They do, Your Honor. But I think that they're — and I think that the Hernandez case does draw that important distinction, which is if the Court shades into I'm punishing you because you were wasting my time by going to trial when you were clearly guilty, that's well out of bounds. If the Court says you could have made a deal and you failed to do so and you're now going to bear the full sentence that you might have been able to get a more favorable sentence by pleading guilty, that's different than saying I'm punishing you for going to trial. Maybe it's a subtle distinction. No, I understand the distinction. It's an important legal one. I'm just — and I'm not suggesting that the government did anything wrong or the district judge did. I'm just saying when one looks at this case, that's what jumps out at you, that one person got a life sentence for the crimes that — at least some of the crimes that two other people got a four-year sentence for. Maybe that's how our system works. It's not a — it doesn't strike me as a good idea, but I'm not sure I can do anything about it. If the panel doesn't have any more questions, I'll — I have no further questions. I only have one brief comment by way of rebuttal, and in some ways it's not even a rebuttal, which is just that I do think that a prosecutor — and I'm not being critical here — but they do have an obligation to try to do justice. And I think that in a case such as this, it's something to be considered.  Certainly not something — no one did anything inappropriate. I don't mean it that way. But in a case like this, the prosecution even expressed sympathy at the sentencing hearing, but I don't think it would be out of bounds for — and this is just food for thought, I suppose — for them to drop charges even after they win when we get a grotesque result such as the one that we had here. I just thought I would mention that. Like, for example, one 25-year sentence probably would have been a just result, maybe even a little harsh on the harsh side, but I think that the district court would have wanted to give them 15 to 20, somewhere in there. And that's no joke, especially, you know, you're 27, you get out when you're 45. Other than that, if there are no other questions, I have nothing else. Thank you. Thank you, Mr. Rabia. The case of U.S. v. Dominique Wells is submitted.
judges: Hawkins, Bea, Hurwitz